UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KAITLYN PORTER,

        Plaintiff,    :

  v.                                Case No. 2:21-cv-4077
                                    Judge Sarah D. Morrison
                                    Magistrate Judge Elizabeth A.
TWO GUYS AND A                   Preston Deavers
CALCULATOR, LLC, *et al.*,    :

        Defendants.

## OPINION AND ORDER

Plaintiff Kaitlyn Porter filed a four-count Complaint against her former employer, Two Guys and a Calculator, LLC (TGAC), and her former manager, Joy Caudill, alleging violations of Title VII of the Civil Rights Act of 1964, Ohio's anti-discrimination laws, and Ohio's whistleblower protection laws. (Compl., ECF No. 1.) TGAC and Ms. Caudill moved for summary judgment on all counts. (Mot., ECF No. 24.) Ms. Porter responded in opposition (Resp., ECF No. 29) and Defendants replied (Reply, ECF No. 24). For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED**.

I.     BACKGROUND

The events giving rise to this action take place between early-January and early-February 2021. The facts are largely undisputed—in part, because much of the relevant communication took place via text messages that appear in the record.

### A. The Parties

TGAC is owned by Tony Marucco and Carson Woods. (Marucco Dep., ECF No. 27, 10:9–17.) The company owns and operates several income-tax preparation stores in Central Ohio under a franchise agreement with Liberty Tax Services. (Caudill Aff., ECF No. 24, PAGEID # 674–78, ¶ 4.) One such location was a recent acquisition in Reynoldsburg, Ohio, just east of Columbus. (*Id.*, ¶ 7.)

Ms. Caudill was employed by TGAC as its Office Manager. (*Id.*, ¶ 3.) In that role, she supervised the receptionists and tax preparers who staffed company storefronts during tax season. (Caudill Dep., ECF No. 28, 31:10–20.)

Ms. Porter was hired as a receptionist at TGAC's West Gate location in January 2021. (Caudill Aff., ¶ 5.)

### B. Ms. Porter trained to become a tax preparer.

Shortly after Ms. Porter was hired, she expressed interest in being a tax preparer. (*Id.*, ¶ 6.) TGAC provided Ms. Porter with access to on-demand training, known as the "Rapid Class," and discussed with her that she could work as a tax preparer in the Reynoldsburg office after completing the Rapid Class and its associated exams. (*Id. See also* Caudill Dep., 113:15–24.)

On January 22, 2021, Ms. Caudill checked-in on Ms. Porter's progress:

> Hi Kaitlyn. Please let me know how you're doing on your test because I'm excited to get you going and introduce you to the Reynoldsburg office! Have a good day.

(ECF No. 24, PAGEID # 691.) Ms. Porter completed the test that day. (*Id.*, PAGEID # 693.)

Before servicing TGAC clients, Ms. Porter needed to "shadow" tax preparation at the Reynoldsburg store and complete additional in-person training. (*See* Caudill Dep., 58:23–60:11.) Ms. Caudill texted Ms. Porter on January 24 about scheduling those in-person components. Ms. Porter expressed concern in her response:

> Im concerned about the switch . i love my office , my environment makes up much of the overall job enjoyment .

(*Id*. (reproduced as written).) The two discussed Ms. Porter's "switch" to the Reynoldsburg store and, by January 26, Ms. Porter's concerns appeared to have been resolved. She said to Ms. Caudill, via text:

> Okay , so i want to go east [to Reynoldsburg] how do you feel about me remaining reception until I get more comfortable in prep . i can do both and jump to prep inbetween. I expected to shadow here [at West Gate] comfortably . switching teachers can throw a wrench in things
>
> I want to try and meet tye company's needs with mine

(*Id*., PAGEID # 700 (reproduced as written).) Ms. Caudill responded:

> The shadowing must be done here [at Reynoldsburg] because there are a few things done differently. We are not going to [100%] change everything they do since we are retaining 2 people.

(*Id*., PAGEID # 701.)

On February 5, Ms. Caudill reached out to Ms. Porter about moving into the tax preparer role, texting:

> Hi Kaitlyn. The project for the rebate recovery credit has been canceled. I need you to finish up all of your training today and do any shadowing that you can. I need to have you behind clients at Reynoldsburg next week with me so that you will be solo

(*Id*., PAGEID # 714.) Ms. Porter responded:

3

> No problem . ill get it done today . ill make it in this weekend to do the practice binder too so I have the confidence I need

(*Id.*, PAGEID # 715 (reproduced as written).)

### C. On February 8, 2021, Ms. Porter worked at the Reynoldsburg store.

Despite the progress made in preparing Ms. Porter to service customers, the relationship soured after she shadowed at the Reynoldsburg store on February 8. Two relevant events took place that day:

First, Ms. Porter shadowed Mr. Aurnou. (Caudill Aff., ¶ 11.) Mr. Aurnou, a licensed CPA, had recently sold the store to TGAC, but agreed to stay on as an employee for the 2021 tax season. (*Id.*, ¶ 7.) Ms. Porter believed that she saw Mr. Aurnou "wrongfully preparing taxes." (Porter Aff., ¶ 7.) By which, she meant that "[h]e was not properly rounding" the income and expenses used to determine a customer's tax liability. (*Id.*)

And second, Ms. Porter's then-girlfriend (now, wife) dropped off lunch for her at the TGAC Reynoldsburg store. (Porter Dep., 118:5–16.) When Ms. Caudill asked about the delivery, Ms. Porter identified the woman as her significant other. (*Id.*, 120:9–23.)

Ms. Porter and Ms. Caudill exchanged the following messages the following day:

> **Porter:** Im coming I will just be late on my way .
>
> Have to get my car out . i got stuck.
>
> **Caudill:** Ok. I'm staying on the west side to keep an office open. I need you to finish your fusion test and shadow Mike [Aurnou].

4

>   Please do not spend a lot of time on your phone as you are being paid.
>
> **Porter:** Can i just do my trai ing from home ?
>
> **Caudill:** Not for pay. We don't allow that.
>
> **Porter:** Joy , im willing to work [Lincoln Village] or [West Gate] . at this point that's it .
>
> **Caudill:** I just left you a message. Please call me.
>
>   Kaitlyn – I need you to let me know about your text. Are you staying you will not work at [Reynoldsburg]?
>
> **Porter:** I think we should sit down and discuss it yes . my concern was the environment . im progressive and im not sure [Reynoldsburg] is a good fit . it will create frustration in my position. Im not willing to shadow someone whos not doing this right

(*Id.*, PAGEID # 717–20 (texts reproduced as written, except where indicated with brackets).)

Ms. Caudill tried to reach Ms. Porter by phone, with no success. (ECF No. 24, PAGEID # 721.) So, she texted:

> The position being offered to you is a tax preparer at [Reynoldsburg]. Please think about whether you will accept or decline and send a response to both me and Tony [Marucco] in writing by the end of the day. I have back to back appts today so I will need to know by 9:00 pm. Thank you.

(*Id.*) Ms. Porter responded:

> I don't appreciate how you hired someone in my place before i accepted a position then you treat me as tho this is it and this is all i have. Ill take the position i was hired for before i was pushed out due to the conpanys needs since i need to let you know in writing
>
> Ill be reporting for my position as hired tomorrow. Let me know in writing weather or not your letting me know you illegally replaced me or not

5

(*Id.*, PAGEID # 722–23.) Ms. Caudill wrote back, reiterating that Ms. Porter's offer was to work as a tax preparer at the Reynoldsburg store and advising that no other positions were available. (*Id.*, PAGEID # 724.) Ms. Caudill invited Ms. Porter to discuss the matter with Mr. Marucco. (ECF NO. 24, PAGEID # 727.) Ms. Caudill expressed her concerns to Mr. Marucco, as well. (Caudill Aff., ¶ 17.) Mr. Marucco ultimately decided to terminate Ms. Porter, and directed Ms. Caudill to deliver the message. (Caudill Aff., ¶ 17'; Marucco Dep., 41:16–22.)

Ms. Porter then filed a charge of discrimination with the Equal Employment Opportunity Commission. (ECF No. 1-3.) After the EEOC issued a right-to-sue letter, Ms. Porter filed her Complaint in the instant action, asserting the following claims:

| | | |
|---|---|---|
| Count I: | Sex Discrimination — Title VII (TGAC) | |
| Count II: | Sex Discrimination — Ohio Rev. Code § 4112.01 *et seq.* (TGAC) | |
| Count III: | Violation of Ohio Whistleblower Statute — Ohio Rev. Code § 4113.52 (Both Defendants) | |
| Count IV: | Aiding, Abetting, and Inciting Discrimination — Ohio Rev. Code § 4112.02(J) (Ms. Caudill) | |

(Compl.) TGAC and Ms. Caudill move for summary judgment on all counts. (Mot.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v.*

6

*Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

## III. ANALYSIS

### A. Sex Discrimination Claims[1] (Counts I and II)

Ms. Porter first alleges that TGAC[2] terminated her employment because of her sexual orientation, in violation of federal and state law. (Compl., ¶¶ 86, 96.) Under federal law, it is illegal "for an employer . . . to discharge any individual. . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). "Sex" has been interpreted to include sexual orientation. *Bostock v. Clayton County, Georgia*, 140 S.Ct. 1731, 1741 (2020).

A plaintiff can prove discrimination using either direct or circumstantial evidence. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). In the absence of direct evidence, as here, discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), as modified by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)). Under this framework, a plaintiff must first establish a *prima*

---

[1] "Ohio courts hold that federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to state-law discrimination claims under R.C. Chapter 4112." *Martin v. Block Commc'ns*, No. L-16-1213, 2017 WL 1422889, at *5 (Ohio Ct. App. Apr. 12, 2017) (citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981)). Accordingly, the Court will analyze Ms. Porter's federal and state law claims of sex discrimination (Counts I and II, respectively) together.

[2] Defendants correctly argue that Ms. Caudill, as an individual supervisor, cannot be held liable under Title VII or the Ohio state law corollary. *See Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997) ("We now hold that an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII."). However, the Complaint specifies that Counts I and II are asserted against TGAC alone, and not Ms. Caudill.

*facie* case of discrimination. *Burdine*, 450 U.S. at 252–53. Doing so creates a rebuttable presumption that the employer engaged in unlawful conduct. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993). The burden then shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. *Burdine*, 450 U.S. at 252–53. This burden is not onerous; an employer need only articulate a valid rationale for its decision. *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996). The plaintiff will then "survive summary judgment only by raising a genuine issue of material fact as to whether the proffered reason is in fact a pretext for" unlawful discrimination. *Walcott v. City of Cleveland*, 123 F. App'x 171, 176 (6th Cir. 2005). The plaintiff bears the burden of persuasion throughout. *See Burdine*, 450 U.S. at 253.

To establish her *prima facie* case of discrimination, Ms. Porter must show that she was (1) a member of a protected class, (2) qualified for her position, (3) subject to an adverse employment action, and (4) replaced by a person, or treated differently than similarly-situated employees, outside the protected class. *White*, 533 F.3d at 391 (citing *McDonnell Douglas*, 411 U.S. at 802). TGAC assumes that Ms. Porter can prove a *prima facie* case. (Mot., 15.) The Court will do the same.

TGAC states that Ms. Porter was terminated for "her failure to perform her job duties . . . and her insubordination in failing to perform them at the location, date and time as directed by her employer[.]" (Defs.' Resp. to Interrog. No. 13, PAGEID # 1098.) Thus, TGAC has articulated a valid reason for its decision. *See Fullen v. City of Columbus*, 514 F. App'x 601, 606 (6th Cir. 2013) ("We have

9

repeatedly held that insubordination may constitute a legitimate, nondiscriminatory reason for adverse action."); *see also Woodle v. Baptist Life Communities*, No. 1:12cv879, 2014 WL 806277, at *9 (S.D. Ohio Feb. 28, 2014) (Bowman, M.J.) (identifying insubordination and failure to follow direction as legitimate, non-discriminatory reasons for plaintiff's termination).

The burden shifts back to Ms. Porter "to demonstrate that the proffered reason was not the true reason for the employment decision." *Burdine*, 450 U.S. at 255. In the Sixth Circuit, "a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009). These three categories are merely a "convenient way of marshaling evidence and focusing it on the ultimate inquiry: 'did the employer fire the employee for the stated reason or not?'" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quoting *Chen*, 580 F.3d at 400 n.4).

Ms. Porter argues that TGAC's stated reason was pretext for unlawful discrimination. Specifically, she asserts that the closeness-in-time between Ms. Caudill learning her sexual orientation and her termination, in combination with other evidence, is sufficient to survive summary judgment.[3] (Reply, 4–5.) But no

---

[3] Ms. Porter concedes that "temporal proximity, standing alone, is insufficient to create a showing of pretext." (Resp., 7–8.) *Cf. Wyatt v. Nissan N.A., Inc.*, 999 F.3d 400, 421 (6th Cir. 2021) (explaining, in context of Title VII retaliation claim analyzed under *McDonnell Douglas*, that "a plaintiff cannot rest solely on temporal proximity to establish pretext").

10

such "other evidence" appears in the record—and, to the extent it exists, Ms. Porter bore the burden of ensuring that it did.

Ms. Porter makes three arguments in favor of the opposite conclusion. Each is easily disposed of. First, Ms. Porter attempts to liken the facts at hand with those in an unreported state court decision discussing Ohio workers' compensation retaliation claims. (Resp., 8 (citing *Rauhuff v. Am. Fan Co.*, CA98-09-188, 1999 WL 527783, at *6 (Ohio Ct. App. June 21, 1999).) However, she wholly fails to explain how or why that case is analogous. Second, Ms. Porter suggests that, although she was terminated for refusing assignment at Reynoldsburg, she in fact reported for work at Reynoldsburg. (*Id.*, 9.) That assertion is belied by the record, which shows that Ms. Porter expressed she was not "willing to work" at the Reynoldsburg location.[4] Finally, Ms. Porter suggests that TGAC "could have placed [Ms. Porter] at a different location or at least given [her] the opportunity to continue working at the Reynoldsburg location[,]" rather than terminating her. (*Id.*) Ms. Porter cites Mr. Marucco's deposition for support. That citation is misplaced, at best.[5]

---

[4] In an apparent effort to avoid summary judgment, Ms. Porter states in her affidavit: "At all times I was willing and able to work at the Reynoldsburg location." (Porter Aff., ECF No. 29-2, ¶ 11.) This statement directly conflicts with her deposition testimony, given under oath, in which Ms. Porter explains that she sent a text on February 9, 2021, stating "Joy , im willing to work [Lincoln Village] or [West Gate] . at this point that's it ." because "that's how [she] felt." (Porter Dep., 170:7–14.) The "sham affidavit" rule "provides that a party cannot create a genuine dispute of material fact with an affidavit that conflicts with the party's earlier testimony about the fact." *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 842 (6th Cir. 2021). The rule applies here and the Court will not consider her affidavit.

[5] Ms. Porter cites pages 45–46 of Mr. Marucco's deposition. Therein, Mr. Marucco explained that he did not believe he could have placed Ms. Porter in a

11

In the absence of other evidence tending to show that TGAC's stated reason was pretext for unlawful discrimination, Ms. Porter's claims cannot proceed. Defendants' Motion for Summary Judgment is **GRANTED** as to Counts I and II.

### B. State Law Claims (Counts III and IV)

Ms. Porter further alleges that (i) Defendants retaliated against her for reporting Mr. Aurnou's rounding error and (ii) Ms. Caudill aided, abetted, and incited discrimination against her, all in violation of the Ohio Revised Code. (Compl., ¶¶ 100–18 (citing Ohio Rev. Code §§ 4113.52, 4112.02(J)).)

Federal courts are "courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Once a court has original jurisdiction over some claims in the action, it can exercise supplemental jurisdiction over additional claims that are part of the same case or controversy. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725 (1966); *Harper v. Auto Alliance Int'l, Inc.,* 392 F.3d 195, 209 (6th Cir. 2004) (holding that claims are part of the same case or controversy if they derive from a "common nucleus of operative facts"). But supplemental jurisdiction is a matter of judicial discretion and "need not be exercised in every case in which it is found to exist." *United Mine Workers of Am.*, 383 U.S. at 726. *See also* 28 U.S.C. § 1367(c) (enumerating circumstances in which "[t]he district courts may decline to exercise supplemental jurisdiction over a claim"). The Court finds that, after disposing of Ms. Porter's sex discrimination claims (including Count I,

---

different location, or transferred another tax preparer to Reynoldsburg. (Marucco Dep., 44:12–45:18.)

the only claim over which this Court has original jurisdiction), exercising supplemental jurisdiction over Counts III and IV would not serve judicial economy, convenience, or comity, and therefore declines to do so. *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 357 (1988).

Ms. Porter's claims for Whistleblower retaliation (Count III) and aiding, abetting, and inciting discrimination (Count IV) are **DISMISSED** without prejudice to re-filing in state court.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 24) is **GRANTED** as to Counts I and II. Counts III and IV are **DISMISSED** without prejudice to re-filing in state court. The Clerk is **DIRECTED** to **TERMINATE** this action from the docket.

IT IS SO ORDERED.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**

13